# Exhibit A

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff*

**Electronically FILED by Superior Court of California, County of Los Angeles 7/27/2026 9:25 AM David W. Slayton, Executive Officer/Clerk of Court, By G. Delgado, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES**
**UNLIMITED JURISDICTION**

DANIEL LERNER, individually, and on behalf of all others similarly situated,

Plaintiff,

vs.

APPLE INC., and DOES 1-10, inclusive,

Defendant.

Case No. 26STCV23632

**CLASS ACTION COMPLAINT**

(1) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*),

(2) Violation of the Consumer Legal Remedies Act (Cal Civ Code § 1770 *et seq.*);

(Amount to Exceed $35,000)

**Jury Trial Demanded**

## NATURE OF THE ACTION

1. Plaintiff DANIEL LERNER ("Plaintiff") brings this class action against Defendant APPLE INC. ("Defendant" or "Apple") for false advertising and unlawful, unfair, and fraudulent business practices arising from Apple's marketing and sale iCloud services including its "Screen Time" parental control system.

2. Apple markets Screen Time as a core safety feature designed specifically to allow parents to control and restrict their children's device usage, including limiting access to applications, enforcing downtime restrictions, and preventing excessive use.

3. Apple affirmatively represents that Screen Time allows parents to "also schedule daily app limits, block content that isn't age appropriate, and more."[1]

4. Specifically, Apple represents that parents may limit usage in the following ways[2]:

a. Downtime: Block apps and notifications for specific periods. When you schedule downtime, only phone calls and apps that you choose to allow are available.

b. App Limits: Set a time limit for a category of apps (like games or social networking) and for individual apps.

c. Always Allowed: Choose who your child can communicate with during downtime. These limits apply to Phone, FaceTime, Messages, Maps, and iCloud contacts. You need to have your iCloud contacts enabled to use this feature

5. These representations are material and are directed specifically at parents concerned with controlling their children's device use, screen exposure, and access to social media.

6. In reality, Screen Time does not function as advertised.

---

[1] Apple Support, *Use Screen Time to Manage Your Child's iPhone or iPad* (May 4, 2026), https://support.apple.com/en-us/108806

[2] *Id.*

7. Instead, Screen Time routinely fails to enforce app limits, fails to block restricted applications, and allows unrestricted usage even when limits are visibly active and configured.

8. Critically, Screen Time simultaneously displays that restrictions are in place, creating a false impression that controls are being enforced when they are not.

9. As a result, parents are misled into believing their children's device usage is restricted and controlled when, in fact, it is not.

10. Apple has long been aware of these failures through widespread and consistent consumer complaints, support requests, and repeated troubleshooting cycles that fail to resolve the issue.

11. Despite this knowledge, Apple continues to market Screen Time as a reliable parental control system without disclosing its material defects.

12. Defendant's conduct constitutes false advertising and unlawful, unfair, and fraudulent business practices under California law.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to Article VI, Section 10 of the California Constitution because the amount in controversy exceeds $35,000 and the claims arise under California statutory law.

14. This action is brought as a class action pursuant to California Code of Civil Procedure § 382.

15. This Court has personal jurisdiction over Defendant because Defendant is a California corporation with its principal place of business in Cupertino, California, and because Defendant purposefully avails itself of the California market by designing, manufacturing, marketing, and selling consumer electronic devices and related software, including the Screen Time feature at issue, to consumers throughout California, including Los Angeles County.

16. Defendant conducts substantial business in California by advertising, marketing, distributing, and selling its devices and software to California consumers, including through retail stores, online platforms, and its integrated software ecosystem, and by deriving substantial

revenue from such activities within this State.

17. Plaintiff resides in Encino, California, within Los Angeles County. The injuries alleged herein were suffered in Los Angeles County, where Plaintiff purchased and used Defendant's iCloud services, enabled and relied upon the Screen Time feature, and experienced the resulting harm when the feature failed to function as represented. Accordingly, venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because Plaintiff resides in this County and the harm giving rise to this action occurred here.

**PARTIES**

18. Plaintiff is an individual residing in Encino, California, within Los Angeles County. Plaintiff is a consumer who purchased and used Apple iCloud services for personal, family, and household purposes, including reliance on Apple's Screen Time parental control features to monitor and restrict their child's device usage.

19. Defendant is a California corporation with its principal place of business at One Apple Park Way, Cupertino, California. Defendant designs, manufactures, markets, and sells consumer electronic devices, including iPhones, as well as proprietary software features, including Screen Time, to consumers nationwide, including in California.

20. Plaintiff is informed and believes that Defendant purposefully directs its advertising, marketing, and sales activities toward California residents and derives substantial revenue from the sale of its devices, iCloud services, and integrated software ecosystem within this State.

21. Plaintiff is informed and believes, and thereon allege, that at all times relevant hereto, each of the Defendants, including DOES 1–10, was the agent, affiliate, subsidiary, or alter ego of each of the remaining Defendants and was at all times acting within the course and scope of such relationship.

22. Plaintiff is informed and believes, and thereon allege, that said Defendants are in some manner responsible for the acts, omissions, occurrences, and transactions alleged herein, and that such conduct proximately caused the damages suffered by Plaintiffs.

## FACTUAL ALLEGATIONS

23. Plaintiff is a lifelong user of Defendant's devices and services. Plaintiff has been using Defendant's services since the 1990s. Plaintiff initially purchased an iPhone in 2007, and began using iCloud services in 2011.

24. Plaintiff purchased iCloud services for his family beginning in 2011, and has provided access to Apple devices and services for his children throughout their lives.

25. Plaintiff became aware of Defendant's various parental control features through Defendant's website in 2011. Defendant's representations about its parental control safety features are the sole reason why Plaintiff has purchased iCloud services for his family, and the sole reason why Plaintiff allows his children to use Apple devices at all.

26. Defendant introduced parental controls in 2008, and prior to the introduction of "Screen Time", the parental control features largely operated on a "block or unblock" basis.[3]

27. Beginning in 2018, Defendant introduced "Screen time" as a modular system that allowed more complex parental controls including restrictions for applications, websites, and a new feature called "Downtime" that allowed parents to block access to devices for set periods of time.[4]

28. Plaintiff became aware of the "Screen Time" features through Defendant's website and through his use of Apple devices that he owns. Plaintiff immediately adopted "Screen Time" and implemented its features on devices when they were provided to his children.

29. Plaintiff allowed his son, Asher, to use Apple devices including an iPhone, iPad, and MacBook Air, beginning during or about 2023 and continuing through 2025, specifically because of Apple's parental control features. All of Asher's devices were logged in using Plaintiff's family iCloud account, giving Plaintiff access to parental control features allowing

---

[3] Apple Inc., *iPhone User Guide for iOS 5.1 Software* (2012), https://cdsassets.apple.com/live/6GJYWVAV/user/ma1622_iphone_ios5_user_guide.pdf

[4] Apple, *iOS 12 Introduces New Features to Reduce Interruptions and Manage Screen Time*, Apple Newsroom (June 4, 2018), https://www.apple.com/newsroom/2018/06/ios-12-introduces-new-features-to-reduce-interruptions-and-manage-screen-time/

him to monitor Asher's usage.

30. Plaintiff understood and intended that the Screen Time restrictions would be enforced by Defendant's system as part of its parental control functionality and would allow Plaintiff to block or limit his son's access to harmful websites and applications such as YouTube, Snapchat, Instagram, and TikTok.

31. However, beginning in or about 2025, each of Asher's devices began to allow him to access blocked apps and websites without limit. Frequently, Plaintiff would discovery that despite Screen Time representing that apps, such as Snapchat, were blocked his son would spend several hours using those apps.

32. Plaintiff properly configured Screen Time settings, including application limits and restrictions, which were displayed by on his iPhone and computers as active and in effect for all of Asher's devices.

33. Plaintiff further observed that Screen Time displayed that certain applications had no permitted usage time, including "0 seconds," yet those same applications were being actively used for substantial periods of time. This discrepancy demonstrated that Defendant's system was not enforcing the restrictions it represented were in place.

34. In one documented instance, Plaintiff observed that their son's total daily device usage was approximately 15 hours and 17 minutes, including approximately 4 hours and 50 minutes on Snapchat, over 1 hour on Instagram, and additional substantial usage across other applications. Such usage was not possible if the Screen Time limits configured by Plaintiffs had been functioning as represented.

35. At all relevant times, Defendant's Screen Time system continued to display that restrictions and limits were active, including visual indicators reflecting that usage limits had been reached or imposed. Despite these representations, the system failed to enforce those limits, thereby creating a false impression that parental controls were functioning.

36. Plaintiff documented these failures through screenshots and screen recordings showing that Screen Time indicated active restrictions and zero-time allowances for certain

applications while those same applications were being used. These materials demonstrate that Defendant's system fails to enforce its core functionality. Screen Shots are attached hereto a Exhibit A through C.

37. Plaintiff contacted Defendant's support services in an effort to resolve the issue multiple times by email. Defendant required Plaintiff to perform multiple troubleshooting steps, including updating the device's operating system, reconfiguring Screen Time settings, and submitting diagnostic log files for review.

38. Plaintiff complied with Defendant's requests, including updating the device and submitting diagnostic logs on multiple occasions. During communications with Defendant's support representatives, Plaintiff was informed that the issues with Screen Time were attributable to a "bug." Despite this acknowledgment, Defendant was unable to provide a fix or resolution, and the Screen Time functionality remained defective.

39. Defendant, through email, continued to request additional troubleshooting steps, including further updates and log submissions, without resolving the underlying issue, resulting in repeated and unsuccessful attempts by Plaintiff to restore the functionality of Screen Time.

40. On information and belief, Defendant has received numerous similar complaints from other consumers reporting that Screen Time limits are not enforced, that restricted applications remain accessible, and that settings reset or fail without explanation.

41. These complaints appear across Defendant's own support forums and third-party forums and consistently describe the same issues experienced by Plaintiffs, including the failure of Screen Time to enforce app limits and restrictions despite showing that such limits are active.[5]

42. Based on the above referenced online complaints, these issues appear to have

[5] *Screen Time Limits and Downtime Not Working on Child's Device*, Reddit, https://www.reddit.com/r/iphone/comments/18vc46z/screen_time_limits_and_downtime_not_working_on (last visited June 24, 2026); *Screen Time Limits and Downtime Not Working on Child's Device*, Apple Support Cmtys., https://discussions.apple.com/thread/256021464 (last visited June 24, 2026); *Screen Time Is Not Restricting App Usage as Expected*, Apple Support Cmtys., https://discussions.apple.com/thread/255940522 (last visited June 24, 2026); *Screen Time Not Working as Expected on Daughter's iPhone*, Apple Support Cmtys., https://discussions.apple.com/thread/255910960 (last visited June 24, 2026); pple Support Cmtys., https://discussions.apple.com/thread/254414974 (last visited June 24, 2026); Apple Support Cmtys., https://discussions.apple.com/thread/255341544 (last visited June 24, 2026).

persisted across multiple iOS versions and device generations, demonstrating that the defect is widespread and not isolated to Plaintiffs' devices.

43. Defendant knew or, in the exercise of reasonable care, should have known that Screen Time does not function as represented and fails to reliably enforce parental control restrictions.

44. Despite this knowledge, Defendant continues to represent Screen Time on its website and through its devices as a reliable parental control system and fails to disclose that the feature may not enforce limits or may provide a false indication that restrictions are active.

45. As a result of Defendant's failure to provide a functioning parental control system, Plaintiff was unable to effectively restrict his son's access to applications despite repeated efforts to do so. This failure undermined Plaintiff's ability to manage and control his child's device usage as intended despite repeated efforts to do so, including exposure to unrestricted social media usage that Plaintiff expressly attempted to prevent. Accordingly, the iCloud services did not work as Defendant promised and Plaintiff was injured by continuing to pay money for services that did not provide all of the advertised features, specifically Screen Time.

46. Defendant's conduct had a tendency to mislead and deceive reasonable consumers, including Plaintiff, into believing that their son's device usage was being effectively restricted and controlled.

47. On information and belief, Defendant's representations regarding Screen Time, its failure to disclose its defects, and its continued marketing of the feature as a reliable parental control system are standardized business practices applied to the general public in California.

48. As a result of Defendant's conduct Plaintiff has suffered harm including, but not limited to lost money paying for the extra storage necessary for his children to use their Apple devices, loss of serenity, stress, anxiety about the content his son consumed, and frustration.

## CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action, on behalf of himself and all others similarly situated,

and thus, seeks class certification under California Code of Civil Procedure § 382.

50. The class Plaintiffs seek to represent (the "Class") is defined as follows:

> All persons within California who, purchased Apple iCloud services or devices within four years prior to the filing of the original Complaint through to the date of Class certification.

51. Defendant, its officers, directors, parents, subsidiaries, affiliates, agents, and employees, are excluded from The Class. Plaintiff does not know the number of members in The Class, but believe the Class members number in the hundreds, if not thousands, given Defendant's widespread sale and distribution of its devices and iCloud Services throughout California. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

52. Plaintiff reserves the right to amend the Class, and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

53. The members of the Class are ascertainable through Defendant's records, including but not limited to device registration data, Apple ID account data, software usage data, customer support records, and other records maintained in the ordinary course of Defendant's business.

54. Upon information and belief, the proposed Class consists of thousands of consumers nationwide. The Class is so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of The Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiffs are informed and believe and thereon allege that The Class includes hundreds, if not thousands, of members. Plaintiff alleges that The Class members may be ascertained by the records maintained by Defendant.

55. No violations alleged in this Complaint are contingent on any individualized interaction between Class Members and Defendant. Rather, the claims arise from Defendant's standardized marketing, uniform representations regarding the functionality and reliability of

its Screen Time parental control feature, and Defendant's uniform failure to disclose the feature's material defects and limitations.

56. There are common questions of law and fact common to the Class that predominate over any questions affecting only individual members, including but not limited to:

a) Whether Defendant made advertising statements regarding Screen Time that were untrue or misleading;

b) Whether Defendant's representations that Screen Time allows parents to control and restrict their children's device usage were likely to deceive reasonable consumers;

c) Whether Defendant's Screen Time feature fails to function as represented by not enforcing app limits and restrictions;

d) Whether Defendant failed to disclose material facts regarding the limitations and defects of Screen Time;

e) Whether Defendant had knowledge of Screen Time defects and failed to disclose them to consumers;

f) The appropriate measure of restitution and scope of injunctive relief.

57. Plaintiff is a member of the Class he seeks to represent.

58. The claims of Plaintiff are typical of the claims of the Class because they arise from the same course of conduct and are based on the same legal theories.

59. Plaintiff has no interest antagonistic to, or in conflict with, the Class

60. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member, because Plaintiffs relied on Defendant's representations regarding parental control features during the Class Period. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.

61. Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel experienced in complex consumer and class

action litigation.

62. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The financial harm suffered by individual Class Members may be relatively modest compared to the expense of individual litigation. Absent class treatment, Defendant's alleged misconduct would likely continue without effective judicial oversight.

**COUNT I**
**Violation of Unfair Competition Law**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

63. Plaintiff incorporates by reference each allegation set forth above as though fully stated herein.

64. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

**UNFAIR**

65. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

66. UCL cases have applied a variety of tests for what constitutes an "unfair" business practice. *See Durrell v. Sharp HealthCare*, 183 Cal. App.. 4th 1350, 1365 (2010). Here, the Plaintiff satisfies the FTC and Balancing tests.

67. The FTC test requires a consumer to show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

68. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiffs and members of the Class. Plaintiff and Class Members purchased Apple services and allowed his child to use Apple devices in reliance on Defendant's representations regarding parental control features that would allow Plaintiff to control and restrict application and website usage, only to find that the feature fails to enforce those restrictions, including allowing access to applications that were expressly blocked. This failure undermines the core purpose of the feature and exposes users, particularly minors, to unrestricted access despite parental controls being enabled.

69. Defendant's conduct provides no countervailing benefit to consumers and primarily serves Defendant's financial interest in marketing its devices as safe, controllable, and suitable for family use, while failing to ensure that those representations are accurate. Reasonable alternatives exist, including properly disclosing limitations, correcting known defects, and ensuring that parental control features function as represented

70. Finally, the injury suffered by Plaintiff and members of the Class is not one that consumers could reasonably have avoided. Consumers cannot independently verify or override the internal functionality of Apple's proprietary software, and reasonably rely on Defendant's representations that parental control restrictions will be enforced once enabled.

71. The Balancing Test analyzes whether the business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887 (1999).

72. Here, Defendant's conduct is immoral, unethical, oppressive, unscrupulous, and

substantially injures consumers. Defendant represents parental controls as one of its core features. Plaintiff's sole reason for allowing his children to use Apple devices, and thereby his sole reason for purchasing larger iCloud storage plans to allow for their use, was Defendant's representations about its parental control features.

73. Despite Plaintiff's repeated complaints, and the public complaints of numerous other consumers, Defendant failed to resolve the problems allowing children to access harmful applications and websites even through those applications and websites had been blocked by the parental control "Screen Time" feature.

74. Defendant's failure to fix the errors with the "Screen Time" feature allowed children to access harmful material while "Screen Time" reassured parents that such applications and webpages had been blocked.

75. As a result of Defendant's conduct, consumers like Plaintiff suffered emotional stress, fear, loss of serenity, and the loss of value for the money they paid to allow their children to access Defendant's devices.

76. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

77. California Business and Professions Code Section 17200, *et seq*. prohibits "any unlawful...business act or practice."

78. As explained below in more detail, Defendant engaged in false and misleading advertising in violation of the CLRA by making untrue or misleading statements regarding the functionality and reliability of its Screen Time feature.

79. Defendant's violations of the CLRA constitute "unlawful" acts under California Business and Professions Code § 17200. These representations and practices by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 et seq.

80. Had Defendant not engaged in the conduct as outlined above, Plaintiff and Class

Members would not have purchased Apple iCloud services including larger storage plans, or would have paid less for them in light of the nonfunctional Screen Time feature, .and would not have allowed his children to use Apple devices.

81. Defendant has thus engaged in unlawful and unfair business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order for public injunctive relief requiring Defendant to immediately cease such acts of unlawful and unfair business practices and requiring Defendant to correct its actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests judgment be entered against Defendant for the following:

a. An order certifying the Class and appointing Plaintiff as Representative of the Class;

b. An order certifying the undersigned counsel as Class Counsel;

c. An order requiring Defendant, at its own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

d. An order requiring Defendant to engage in corrective advertising regarding the conduct discussed above

e. Any and all actual damages;

f. Equitable and public injunctive relief pursuant to Cal. Bus. & Prof. C. § 17203;

g. Prejudgment interest at the legal rate;

h. Attorneys' fees and costs; and

i. All other relief this Honorable Court deems just and appropriate.

**COUNT II**
**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT**
**(CAL. CIV. CODE § 1770 *ET SEQ.*)**

82. Plaintiff incorporates by reference all previous paragraphs as if set forth herein.

83. Defendant's actions as detailed above constitute the following violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1770 ("CLRA"):

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have, in violation of Cal. Civ. Code § 1770(a)(5);

b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another, in violation of Cal. Civ. Code § 1770(a)(7);

c. Advertising goods or services with intent not to sell them as advertised, in violation of Cal. Civ. Code § 1770(a)(9);

d. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, in violation of Cal. Civ. Code § 1770(a)(14); and

e. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, in violation of Cal. Civ. Code § 1770(a)(16).

84. Pursuant to California Civil Code § 1782(d), Plaintiff presently seeks public injunctive relief under the CLRA. Plaintiff has provided, or will provide, Defendant with written notice of its violations and demand for correction as required by California Civil Code § 1782(a). If Defendant fails to correct, repair, replace, or otherwise rectify the unlawful practices described herein within thirty (30) days of receipt of such notice, Plaintiff will amend this

Complaint to seek actual damages, restitution, punitive damages, and all other relief permitted under California Civil Code § 1780.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment against Defendant and in favor of Plaintiff and the Class and grant the following relief:

(a) An order certifying this action as a class action pursuant to Code of Civil Procedure § 382, appointing Plaintiffs as Class Representative, and appointing the undersigned counsel as Class Counsel;

(b) An order requiring Defendant, at their own expense, to provide notice to all Class Members of the pendency of this action and the unlawful, deceptive, and unfair practices alleged herein;

(c) An order for Public Injunctive Relief prohibiting Defendant from continuing the unlawful conduct described in this Complaint, including future unlawful and unfair business practices;

(d) An order for restitution pursuant to California Business and Professions Code §§ 17203 and 17535 restoring to Plaintiffs and Class Members all monies acquired by means of Defendant's unlawful, unfair, and fraudulent practices;

(e) An order for disgorgement of ill-gotten gains to the extent permitted by law;

(f) An award of reasonable attorneys' fees and costs pursuant to statute, including but not limited to Code of Civil Procedure § 1021.5, and any other applicable provision of law;

(g) An award of prejudgment and post-judgment interest as permitted by law; and

(h) Such other and further legal or equitable relief as the Court may deem

proper, just, and appropriate under the circumstances.

Dated: July 27, 2026

Respectfully submitted,

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

By: ______________________________
TODD M. FRIEDMAN, ESQ.
Attorney for Plaintiff